# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BILAL ASSAAD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-cv-3101 (RBW) |
| | ) | |
| MARCIA FUDGE,[1] Secretary of the | ) | |
| United States Department of Housing and | ) | |
| Urban Development, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

The plaintiff, Bilal Assaad, brings this civil action against the defendants, Marcia Fudge, the Secretary of the United States Department of Housing and Urban Development (the "Agency"), and the Agency, asserting a claim of employment discrimination based upon his "national origin, ethnic origin, religion, and/or race," in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16 ("Title VII"), see Complaint and Demand for Jury Trial ("Am. Compl.") ¶ 16, ECF No. 5. Currently pending before the Court is the defendants' motion to dismiss or, in the alternative, for summary judgment. See Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment ("Defs.' Mot." or the "defendant's motion"), ECF No. 19. Upon careful consideration of the parties' submissions,[2] the Court concludes for the following reasons that it must grant in part and deny as moot in part the defendants' motion.

---

[1] Marcia Fudge is the current Secretary of the United States Department of Housing and Urban Development, and she is therefore automatically substituted for Ben Carson as the proper party defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] In addition to the filings already identified, the Court considered the following submissions and accompanying exhibits in rendering its decision: (1) the Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment ("Defs.' Mem."), ECF No. 19-1; (2) the Plaintiff's

(continued . . .)

# I.   BACKGROUND

## A.   Factual Background

The plaintiff is a "Muslim [man] of Lebanese descent[,]" Am. Compl. ¶ 13, who was employed "as a probationary General Engineer" in the Agency's "Real Estate Assessment Center for the Public and Indian Housing Program Office . . . in Washington, DC," id. ¶ 2.  The plaintiff began his "one[-]year probationary period" with the agency in this position, id. ¶ 4, "on or about January 14, 2017[,]" id. ¶ 2, under the supervision of Donald J. Lavoy, Deputy Assistant Secretary for the Real Estate Assessment Center, see id. ¶ 3.

While employed at the Agency, the plaintiff received "a series of outstanding evaluations[,]" id. ¶ 4, and was "considered an outstanding employee," id. ¶ 3, by "Lavoy and all of his other supervisors[,]" id.  However, despite this performance, the plaintiff "was abruptly terminated, without notice, for 'lack of fitness,' in a meeting" with "Lavoy[] and [ ] Joseph Sullivan[,[3]]" Director of Employee & Labor Relations, on January 11, 2018[,] "[ ] just a few days before the end of his one[-]year probationary period[.]"  Id. ¶ 4.  The plaintiff contends that during this termination meeting, "Sullivan [ ] falsely informed [the plaintiff] that [ ] Lavoy [had] terminated him for unspecified reasons related to the quality of his work."  Id. ¶¶ 5–6.  At the termination meeting, the plaintiff allegedly "was not given any specific reasons for [his] termination, but simply a written statement that he had shown 'lack of fitness for continued employment,' which is simply a recitation of the termination standard for dismissal of a probationary employee for fitness reasons that occur during the probationary period."  Id. ¶ 7

---

(. . . continued)
Response to Defendants' Motion to Dismiss ("Pl.'s Opp'n"), ECF No. 23; and (3) the Reply in Support of Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment ("Defs.' Reply"), ECF No. 24.

[3] The plaintiff alleges that, "[a]t th[e termination] meeting, [ ] Sullivan introduced himself using a false name," and that the plaintiff "would only learn [Sullivan's] real name later upon investigation."  Am. Compl. ¶ 5.

(citing 5 C.F.R. § 315.804). The plaintiff represents that he later learned that the reason given "for his termination was false[,]" id. ¶ 8, because he was in fact "terminated" under "5 C[.]F[.]R[.] § 315.805[,]" id. ¶ 10, for issues that "stemmed from pre-employment concerns over his background that were 'classified[,]'" id. ¶ 8. The plaintiff alleges that "the reasons behind his termination have been intentionally withheld by the Agency." Id. ¶ 11.

**B.      The Plaintiff's Challenges to His Termination**

After the plaintiff's termination, he pursued litigation at the Merit Systems Protection Board ("MSPB") and the Equal Employment Opportunity Commission ("EEOC"). Id. ¶ 10.

**1.      The Plaintiff's MSPB Challenge**

On February 9, 2018, the plaintiff filed a mixed-case[4] appeal with the MSPB, which was dismissed "for lack of [MSPB] jurisdiction" on August 27, 2018. Defs.' Mot., Exhibit ("Ex.") 1 (Assaad v. Dep't of Housing & Urban Dev., 118 LRP 35061 (M.S.P.B. Aug. 27, 2018) ("MSPB Decision")) at 1, ECF No. 19-3.[5] The Administrative Law Judge ("ALJ") for the MSPB found that (1) the plaintiff "was terminated for pre-appointment reasons[,]" rather than issues related to the quality of his work and (2) although there was procedural error because the plaintiff "was not provided with notice and opportunity to reply before he was terminated[,]" the plaintiff had "not established that this failure constituted harmful procedural error." Id., Ex. 1 (MSPB Decision) at 3. Following the ALJ's initial decision, the plaintiff "appealed to the [MSPB] in a [p]etition

---

[4] "When an employee complains of a personnel action serious enough to appeal to the MSPB and alleges that the action was based on discrimination, [they are] said (by pertinent regulation) to have brought a 'mixed case.'" Kloeckner v. Solis, 568 U.S. 41, 44 (2012) (emphasis in original); see also 29 C.F.R. § 1614.302 (2012) (defining a mixed-case appeal as "an appeal filed with the MSPB that alleges that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national origin, disability, age, or genetic information").

[5] Although the plaintiff did not submit the MSPB Decision with his Amended Complaint, see generally Am. Compl., the Court takes judicial notice of the decision, which was included as an attachment to the defendants' motion to dismiss, see Defs.' Mot., Ex. 1 (MSPB Decision). See Vasser v. McDonald, 228 F. Supp. 3d 1, 10 (D.D.C. 2016) ("[C]ourts have taken judicial notice of Final Agency Decisions, especially for background information such as dates of filings[.]").

for [r]eview on October 1, 2018[.]"  Pl.'s Opp'n at 4; see Defs.' Mem. at 6 ("On October 1,

2018, [the p]laintiff filed a petition for review of the MSPB['s] [ ] [d]ecision.").  As of the date

of filing of the plaintiff's Complaint, "there has been no decision on the [p]etition for

[r]eview[,]" which has been fully briefed since "October 26, 2018[,]" allegedly due to the lack of

a "quorum of [MSPB] Members . . . since January 2017."  Pl.'s Opp'n at 4; see Defs.' Mem. at 6

(noting that the plaintiff's "petition for review [of the MSPB's decision] is still pending").[6]

### 2.  The EEOC Challenge

On April 4, 2018, the plaintiff filed a complaint with the EEOC.  See Defs.' Mot., Ex. 3

(Formal Complaint of Discrimination (Apr. 4, 2018) ("EEO Compl.")) at 3, ECF No. 19-5.  On

April 30, 2018, the EEOC ALJ granted "summary judgment in favor of the Agency" because the

plaintiff "failed to present any evidence to establish a prima facie case of discrimination and

ha[d] not offered evidence to show that [the Agency]'s articulated reasons [we]re pretextual."

Id., Ex. 6 (Assaad v. Carson, EEOC Decision No. 570-2019-00944X (Apr. 30, 2020) ("EEOC

Decision")) at 6 (emphasis omitted), ECF No. 19-8.  Following the EEOC decision, the Agency

informed the plaintiff that it had "accept[ed] and fully implement[ed] the A[L]J's decision."  Id.,

Ex. 6 (Letter from Tami L. Wright, Acting Dir., Off. of Departmental Equal Emp. Opportunity

Div., Dep't of Housing & Urban Dev., to Bilal Assaad (July 31, 2020) ("HUD EEOC

Decision")) at 1, ECF No. 19-8.

### C.  Procedural History

On October 28, 2020, the plaintiff filed his Complaint in this case.  See Complaint and

Demand for Jury Trial ("Compl.") at 1, ECF No. 1.  On November 23, 2021, the defendants filed

their motion to dismiss or, in the alternative, for summary judgment.  See Defs.' Mot. at 1.  The

---

[6] At the time of this Memorandum Opinion's issuance, the parties have not advised the Court as to whether the plaintiff's petition has been ruled on by the MSPB.

plaintiff then filed his opposition to the defendants' motion on January 31, 2022, see Pl.'s Opp'n at 1, and the defendants filed their reply on March 11, 2022, see Defs.' Reply at 1.

## II.    STANDARD OF REVIEW[7]

A Rule 12(b)(6) motion tests whether a complaint "state[s] a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). Also, the Court need not "accept legal conclusions cast as factual allegations[,]" or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint[.]" Hettinga, 677 F.3d at 476. Moreover, the Court "may consider

---

[7] Because, for the reasons discussed infra Section III, the Court grants the defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), it need not set forth the standard of review for summary judgment pursuant to Rule 56, and will deny as moot the defendant's motion in the alternative for summary judgment. See Jenkins v. Navy Marine Corps Ct. of Crim. Appeals, Civil Action No. 08-0057 (RMU), 2009 WL 646326, at *2 n.3 (D.D.C. Mar. 12, 2009) (denying as moot the Navy Marine Corps Court of Criminal Appeals's motion in the alternative for summary judgment after granting its motion to dismiss).

only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice." Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

### III.    ANALYSIS

The defendants argue that the plaintiff's Amended Complaint should be dismissed pursuant to Rule 12(b)(6) because (1) the "[p]laintiff failed to exhaust his administrative remedies[;]" and (2) the plaintiff "challenge[s] a national security decision that is committed to the discretion of the Executive Branch and[ is,] therefore, non-justiciable." Defs.' Mot. at 1. In response, the plaintiff argues that (1) he has "the right to file a mixed-case claim in [the] District Court" because "120 days have elapsed since the filing of [his] MSPB [a]ppeal without a final decision," Pl.'s Opp'n at 5 (citing 5 U.S.C. § 7702(e)(1)(B)); and (2) this case is justiciable because "none of the issues [here] require the Court to substitute its decisions for the [g]overnment['s]" with regards to "questions of national security[,]" id. at 10. The Court will first address administrative exhaustion, before proceeding to justiciability.[8]

### A.    Whether the Plaintiff Exhausted His Administrative Remedies

The defendants argue that the "[p]laintiff failed to exhaust his administrative remedies[,]" Defs.' Mem. at 1, because, "while [he] is attempting to prosecute his discrimination claim in this

---

[8] The defendants also argue that the Court should dismiss the plaintiff's Amended Complaint because the plaintiff failed to effectuate service by the Court-ordered deadline. See Defs.' Mot. at 1 ("[The p]laintiff failed to complete timely and valid service of process on the United States within the 90-day service period or within the extended period allowed by the Court."). However, because the Court will grant the defendants' motion for the reasons set forth infra, the Court need not reach this ground for dismissal. See, e.g., Mulkerin v. Bunch, No. 19-cv-03850, 2021 WL 3771806, at *2 n.3 (D.D.C. Aug. 25, 2021) ("The Court declines to resolve the [defendant]'s argument that [the plaintiff] failed to effectuate service by the Court-ordered deadline because it resolves on [ ] Rule 12(b)(6) grounds the [defendant]'s motion to dismiss in its favor.").

Court, he is simultaneously petitioning the MSPB[9] for review of the initial decision from the [ALJ] that dismissed his . . . mixed-case appeal for lack of jurisdiction[,]" id. at 24.  In response, the plaintiff argues that the case should not be dismissed for failure to exhaust administrative remedies because he "has the right to file a mixed-case claim in District Court where 120 days have elapsed since the filing of [his] MSPB [a]ppeal without a final decision."  Pl.'s Opp'n at 5. For the following reasons, the Court agrees with the plaintiff.

"Title VII '[c]omplainants must timely exhaust the[ir] administrative remedies before bringing their claims to court.'"  Payne v. Salazar, 619 F.3d 56, 65 (D.C. Cir. 2010) (quoting Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997)).  "A plaintiff is [also] required to exhaust [his or] her claims in the forum [he or] she has chosen before filing a civil action." Williams v. Munoz, 106 F. Supp. 2d 40, 43 (D.D.C. 2000).  "When a complainant appeals to the MSPB, either directly or after pursuing [his or] her claim with the [A]gency['s] EEO office, the matter is assigned to an [ALJ] who takes evidence and eventually makes findings of fact and conclusions of law."  Dunbar v. Foxx, 246 F. Supp. 3d 401, 419 (D.D.C. 2017) (citations and internal quotation marks omitted).  An ALJ's initial decision "become[s] the [MSPB]'s final decision 35 days after issuance[,]" 5 C.F.R. § 1201.113, unless "any party files a petition for review[,]" id. § 1201.113(a).  If a petition for review is filed, either "the initial decision will become final when the [MSPB] issues its last decision denying a petition for review[,]" id. § 1201.113(b), or "the decision of the [MSPB granting a petition for review or reopening or

---

[9] As both parties correctly note, see Defs.' Mem. at 24–25; Pl.'s Opp'n at 4, although the plaintiff pursued administrative claims before both the EEOC and the MSPB, see supra Section I.B, the MSPB is his chosen administrative forum for purposes of this case, see 29 C.F.R. § 1614.302(b) (providing that a federal employee may proceed by either "initially fil[ing] a mixed case complaint with" the EEOC "or an appeal on the same matter with the MSPB . . ., but not both[,]" and "whichever [case] is filed first shall be considered an election to proceed in that forum"), because he filed his MSPB complaint first, compare Defs.' Mot., Ex. 1 (MSPB Decision) at 1 (noting that the plaintiff filed his mixed-case appeal with the MSPB on February 9, 2018), with id., Ex. 3 (EEO Compl.) at 3 (noting that the plaintiff filed his EEO complaint on April 4, 2018).

dismissing a case] is final if it disposes of the entire action." Id. § 1201.113(c).  Under 5 U.S.C. § 7702(e)(1)(B), if "120 days elapse without a final decision[ by either the ALJ or the MSPB following a petition for review], the appropriate federal district court can take jurisdiction as well[,]" "[a]lthough the MSPB does not lose its jurisdiction[.]" Butler v. West, 164 F.3d 634, 642 (D.C. Cir. 1999); see 5 U.S.C. § 7702(e)(1)(B) (providing that "if at any time after . . . the 120th day following the filing of an appeal with the [MSPB] . . . , there is no judicially reviewable action[,] . . . an employee shall be entitled to file a civil action to the same extent provided by" Title VII); Townsend v. United States, 236 F. Supp. 3d 280, 299 n.9 (D.D.C. 2017) ("Section 7702 clearly express[es] Congress'[s] desire that mixed cases should be processed expeditiously, and that complainants should have access to a judicial forum should their claims languish undecided in the administrative machinery." (alteration in original) (citation and internal quotation marks omitted)).  Accordingly, if an MSPB claimant does not have "a resolution from the MSPB within the prescribed time period of 120 days," he or she may "properly elect[] to seek judicial resolution of his [or her] pending [ ] claims in" federal district court.  Ahuruonye v. U.S. Dep't of Interior, 312 F. Supp. 3d 1, 18 (D.D.C. 2018) (Walton, J.).

Here, the plaintiff exhausted all available administrative remedies before the MSPB before asserting those same claims before this Court.[10]  The plaintiff received the initial MSPB

---

[10] The defendants argue that the plaintiff's Amended Complaint is based upon his EEOC complaint, rather than his MSPB mixed-case appeal, because the Amended Complaint "challeng[es] the same employment action based on the Agency's final decision on [the p]laintiff's separate EEO[C] complaint" and includes as attachments the EEOC Decision.  Defs.' Mem. at 25.  The Court disagrees.  As an initial matter, the Court notes that the plaintiff's Amended Complaint, like his MSPB mixed-case appeal, contains references to both discrimination and procedural error, whereas his EEOC complaint only alleges discrimination.  Compare Defs.' Mot., Ex. 1 (MSPB Decision) at 2 (raising issues of (1) "national origin/ethnicity (Lebanese/Middle Eastern) and religious discrimination (Muslim)" and (2) procedural error because he "was not given notice and an opportunity to reply") and Am. Compl. ¶ 16 (alleging that the Agency discriminated against him and "terminat[ed him] without affording him the rights afforded to probationary employees under 5 C[.]F[.]R[.] § [ ] 315.804, such as notice and an opportunity to rebut the termination"), with Defs.' Mot., Ex. 3 (EEO Compl.) at 6 (alleging only that "the true reason for [his] termination stem[med] from [his] Middle Eastern background").  However, even if the Court concluded that the plaintiff has not failed to exhaust his administrative remedies before the MSPB, the Court concludes, infra, that the plaintiff's

(continued . . .)

decision from the ALJ on August 27, 2018, see Defs.' Mot., Ex. 1 (MSPB Decision) at 1, and

"appealed to the [MSPB] in a [p]etition for [r]eview on October 1, 2018," Pl.'s Opp'n at 4,

within the "35 days after issuance," within which time "any party [may] file[] a petition for

review," 5 C.F.R. § 1201.113.  Then, after "not having a resolution from the MSPB within the

prescribed time period of 120 days," Ahuruonye, 312 F. Supp. 3d at 18—indeed, over two years

passed between the plaintiff's filing of his appeal on October 1, 2018, see Pl.'s Opp'n at 4, and

his filing of this case on October 28, 2020, see Compl. at 1—"the plaintiff properly elected to

seek judicial resolution of his pending [ ] claims in this forum[,]" Ahuruonye, 312 F. Supp. 3d at

18.  Therefore, the Court agrees with the plaintiff that he has not failed to exhaust his

administrative remedies.

## B.   Whether the Plaintiff's Discrimination Claim Is Non-Justiciable

The defendants next argue that the Court should dismiss the plaintiff's Amended

Complaint because he "seek[s] to challenge a national security decision that is . . .

non-justiciable[,]" Defs.' Mot. at 1, under the Supreme Court's decision in Department of Navy

v. Egan, see Defs.' Mem. at 25 (citing Egan, 484 U.S. 518 (1988)).  In response, the plaintiff

argues that (1) the Court should not "rel[y] []on ex parte evidence to decide the merits of a

dispute[,]" Pl.'s Opp'n at 8 (quoting Abourezk v. Reagan, 785 F.2d 1043, 1061 (D.C. Cir.

1986)); and (2) despite the Court's inability to review his discrimination claim under Egan, "[i]f

the Court finds that [he] was not afforded his rights under the MSPB regulatory structure, it can

issue a judgment" in his favor "without ever disclosing national secrets[,]" id. at 10.  For the

---

(. . . continued)

Amended Complaint must be dismissed for lack of justiciability, see infra Section III.B.  Accordingly, because the
determination of whether the Amended Complaint is based on the EEOC complaint or the MSPB mixed-case appeal
does not affect the overall disposition of this case, the Court assumes for the purposes of its analysis that the
plaintiff's Amended Complaint is based on the MSPB Decision, rather than the EEOC Decision.

following reasons, the Court concludes that the plaintiff's discrimination claim is non-justiciable

and that his claims that he "was not afforded his rights under the MSPB regulatory structure[,]"

id., must be dismissed.

      "[T]he presumption in favor of judicial review of administrative action 'runs aground

when it encounters concerns of national security.'"  Foote v. Moniz, 751 F.3d 656, 658 (D.C.

Cir. 2014) (quoting Egan, 484 U.S. at 527).  In Department of the Navy v. Egan, the Supreme

Court held that the MSPB lacked the authority "to review the substance of an underlying

decision to deny or revoke a security clearance[,]" id. at 520, "where the grant of a security

clearance to a particular employee [was] a sensitive and inherently discretionary judgment call

. . . committed by law to the appropriate agency of the Executive Branch[,]" id. at 527.  In the

context of employment discrimination claims, "a court cannot clear the second step of [the]

McDonnell-Douglas" burden-shifting framework, which "requires 'the defendant employer to

articulate a legitimate, nondiscriminatory reason for its adverse employment action[,] . . . without

running smack up against Egan' because, when the government's proffered non-discriminatory

reason pertains to national security, the plaintiff 'c[an]not challenge the proffered reason's

authenticity without also challenging its validity.'"  Clark v. Johnson, 206 F. Supp. 3d 645, 652

(D.D.C. 2016) (quoting Ryan v. Reno, 168 F.3d 520, 524 (D.C. Cir. 1999)).  Accordingly, when

a court is unable to "proceed with [a] discrimination action without reviewing the merits of [a]

decision not to grant a clearance" or a decision is "tantamount to [a security] clearance denial[,]

the court [is] foreclosed from proceeding at all."  Ryan, 168 F.3d at 524; cf. U.S. Info. Agency v.

Krc, 905 F.2d 389 (D.C. Cir. 1990) (concluding that the agency's decision "that [Krc would] not

be cleared for posting overseas" was non-justiciable because it "represented [the agency's]

assessment whether . . . Krc might compromise sensitive information" (internal quotation marks

and alterations omitted)); <u>Foote</u>, 751 F.3d at 658 (concluding that the agency's "decision whether

to certify someone under its Human Reliability Program" was non-justiciable because it, "like

the decision whether to grant a regular security clearance, is an attempt to predict an applicant's

future behavior and to assess whether . . . he might compromise sensitive information" (internal

quotation marks omitted)).

     Here, in order to resolve the plaintiff's discrimination claim, the Court would be required

to "review[] the merits[,]" <u>Ryan</u>, 168 F.3d at 524, of the Agency's decision that the plaintiff

should be terminated in light of the results of his background investigation.  As described in the

plaintiff's Amended Complaint, the plaintiff alleges that the Agency "[d]etermin[ed] that [he]

was not an appropriate fit for the Agency solely or primarily due to his religious, ethnic, national,

or racial background[.]"  Am. Compl. ¶ 16(a).  In response, the defendants assert that the

Agency's "nondiscriminatory reason for terminating [the p]laintiff" was based on "classified

security information that cannot be disclosed[,]" Defs.' Mem. at 29; <u>see also</u> Am. Compl. ¶ 10

(alleging that "any reasons for [the plaintiff's] termination stemmed from pre-employment

concerns over his background that were 'classified[]'"), which the plaintiff asserts was

"primarily a pretext for discrimination[,]" Am. Compl. ¶ 12.

     Because the plaintiff does not provide any direct evidence of discrimination, <u>see</u>

<u>generally</u> <u>id.</u>, in order to assess the merits of the plaintiff's discrimination claim, the Court would

be required to determine whether the "classified security information" on which the defendants

based their decision, Defs.' Mem. at 29, warranted the plaintiff's termination or was indeed "a

pretext for discrimination[,]" Am. Compl. ¶ 12.  But, pursuant to, <u>Egan</u>, the Court is precluded

from doing this.  <u>See</u> <u>Ryan</u>, 168 F.3d at 524 ("Because the district court [ ] could not proceed

with the appellants' discrimination action without reviewing the merits of [the defendant's]

decision not to grant a clearance, the court was foreclosed from proceeding at all."); Bennett v. Ridge, 321 F. Supp. 2d 49, 58 (holding that a court is precluded "from exercising subject matter jurisdiction in the Title VII context when an agency's explanation about why an employee was subjected to an adverse employment action w[ould] inevitably require judicial review of the agency's decision to deny a security clearance").  Accordingly, the Court concludes that the plaintiff's discrimination claim is non-justiciable.

    The plaintiff argues that (1) the Court should not "rel[y] []on ex parte evidence to decide the merits of a dispute[,]" Pl.'s Opp'n at 8 (quoting Abourezk v. Reagan, 785 F.2d 1043, 1061 (D.C. Cir. 1986)); and (2) despite the Court's inability to review his discrimination claim under Egan, "[i]f the Court finds that [he] was not afforded his rights under the MSPB regulatory structure, it can issue a judgment" in his favor "without ever disclosing national secrets[,]" id. at 10.  The Court will address the plaintiff's arguments in turn.

    First, the plaintiff contends that the Court relied on "ex parte evidence to decide the merits of [the parties'] dispute."[11]  Id. at 8 (internal quotation marks omitted).  However, the plaintiff is mistaken. The classified information on which the Agency relied in terminating the plaintiff has neither been submitted to nor been reviewed by the Court.[12]  In any event, pursuant

---

[11] In his opposition, the plaintiff also refers to the purported "invocation of the 'state secrets privilege'" by the defendants.  See Pl.'s Opp'n at 9 (citing Molerio v. Fed. Bureau of Invest., 749 F.2d 815, 825 (D.C. Cir. 1984)).  However, the defendants have not invoked—and the Court's decision does not rely on—the "state secrets privilege, i.e., the privilege against disclosure of information that would adversely affect national security[,]" Molerio, 749 F.2d at 820.  See generally Defs.' Mem.; Defs.' Reply.  Rather, the Court is "foreclosed from proceeding" with the plaintiff's discrimination claim because it would have to "review[] the merits of [the Agency's national security] decision" to terminate the plaintiff.  Ryan, 168 F.3d at 524.

[12] In his opposition, the plaintiff argues that "the Court should analyze whether the classified information is truly a compelling national security concern and[,] if so, [determine] the optimal way to divulge whatever information is possible to" the plaintiff, including appointing a lawyer with a security clearance to represent him.  Pl.'s Opp'n at 9.  Since the substance of the classified information is not at issue because review of the plaintiff's discrimination claim is barred under Egan, the Court need not determine whether the classified information should be released to the plaintiff or whether he is entitled to have a lawyer with a security clearance to review it.

to Egan, the Court is precluded from even considering the plaintiff's discrimination claim, which would require reviewing evidence and deciding the merits of the case.  See Ryan, 168 F.3d at 524 ("Because the district court [ ] could not proceed with the appellants' discrimination action without reviewing the merits of [the defendant's] decision not to grant a clearance, the court was foreclosed from proceeding at all." (emphasis added)).

Second, despite the fact that the plaintiff's Amended Complaint explicitly sets forth only a discrimination claim pursuant to Title VII, see Am. Compl. ¶ 1 ("This is a claim for employment discrimination pursuant to 42 U.S.C.[] § 2000e, et seq." (underline added)), the plaintiff argues in his opposition that, "[i]f the Court finds that [he] was not afforded his rights under the MSPB regulatory structure, it can issue a judgment" in his favor "without ever disclosing national secrets" or transgressing the justiciability barrier.  Pl.'s Opp'n at 10.  The plaintiff appears to be referring to language in his Amended Complaint asserting that the Agency failed to "afford[] him the rights afforded to probationary employees . . . , such as notice and an opportunity to rebut the termination[,]" Am. Compl. ¶ 16(b), under 5 C.F.R. § 315.804, see id., and 5 C.F.R. § 315.805, see id. ¶ 9.  However, even if the plaintiff intends to merely assert procedural claims pursuant these regulatory provisions, these claims cannot be pursued.

To the extent that the plaintiff is asserting a claim under § 315.804, the Court concludes that this claim must be dismissed.  Under § 315.804, the agency must "terminate [the employee's] services by notifying him [or her] in writing" of (1) "the effective date of the action" and (2) the reasons "why he [or she] is being separated[,]" including, at "minimum, . . . the agency's conclusions as to the inadequacies of his [or her] performance or conduct[.]"  5 C.F.R. § 315.804.  However, although the plaintiff first alleges in his Amended Complaint that he was given "a written statement that he had shown 'a lack of fitness for continued

13

employment,' which is simply a recitation of the termination standard for dismissal of a probationary employee for fitness reasons that occur during the probationary period[,]" id. ¶ 7 (citing 5 C.F.R. § 315.804), he later alleges that this reason "was false[,]" id. ¶ 8, and that, "[i]n fact, he was terminated[,]" id., under "5 C[.]F[.]R[.] § 315.805[,]" id., for "fitness reasons that existed in whole or in part before his probationary period[,]" id. (emphasis in original). Accordingly, because the plaintiff was terminated for "conditions arising before [his] employment[,]" 5 C.F.R. § 315.805, rather than for "unsatisfactory performance or conduct[,]" id. § 315.804, the plaintiff is not entitled to the procedural protections of § 315.804 and any claim based on that provision cannot be sustained.

And, to the extent that the plaintiff asserts a claim under § 315.805, the Court concludes that this claim must also be dismissed. Pursuant to § 315.805, an "employee is entitled to an advance written notice stating the reasons" for his or her termination. 5 C.F.R. § 315.805. However, in order "to establish reversible procedural error[,]" an employee must demonstrate "harmful error in an agency's [failure to comply with its] procedure[s,]" Ward v. U.S. Postal Serv., 634 F.3d 1274, 1281 (Fed. Cir. 2011), i.e., "[e]rror by the agency in the application of its procedures that [wa]s likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error[,]" 5 C.F.R. § 1201.4(r). Here, although the plaintiff alleges procedural error, which was also found by the ALJ, see Defs.' Mot., Ex. 1 (MSPB Decision) at 3 ("[I]t is undisputed that the appellant was not provided with notice and opportunity to reply before he was terminated."), the plaintiff has failed to show that the error "is likely to have caused the agency to reach a conclusion different from the one it would [otherwise] have reached[,]" 5 C.F.R. § 1201.4(r). As noted above, the reasons for the plaintiff's termination were classified and, thus, unavailable to him. See Am. Compl. ¶ 11 ("To this day,

[the plaintiff's] efforts to learn of the reasons behind his termination have been intentionally withheld by the Agency.").  Therefore, even if the plaintiff had been given notice of his termination, he would still have been unable to address the reason for his termination, and any "written answer" by him would not have been "likely to have caused the [A]gency to reach a conclusion different from the one it" reached.  5 C.F.R. § 315.805.  Accordingly, because the plaintiff has not adequately alleged harmful error, the Court concludes that any claim pursuant to § 315.805 could also not be maintained.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must grant in part and deny in part the defendants' motion, and dismiss the plaintiff's Amended Complaint.  The Court will grant the motion to the extent it seeks dismissal pursuant to Rule 12(b)(6).  The Court will deny the motion as moot in all other respects.

**SO ORDERED** this 30th day of November, 2022.[13]

REGGIE B. WALTON
United States District Judge

---

[13] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.